## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**DOUGLAS NEIL HEGAMYER, #1369700**

      **Petitioner,**

v.                                                **Civil Action No. 2:19-cv-644**

**HAROLD W. CLARK, Director,**
**Virginia Department of Corrections,**

      **Respondent.**

### REPORT AND RECOMMENDATION

This matter is before the Court on *pro se* Petitioner Douglas Hegamyer's ("Petitioner") Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 ("the Petition"), ECF No. 1. The matter was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On January 11, 2018, in the Circuit Court of Gloucester County, Petitioner pleaded guilty to strangulation resulting in injury, felon in possession of ammunition, and assault and battery of a family member. ECF No. 16 attach. 2 at 1. In exchange for Petitioner's guilty plea, the Commonwealth moved to *nolle prosequi* a second charge of assault and battery of a family or household member. ECF No. 16 attach. 2 at 2. On April 10, 2018, the trial court sentenced Petitioner to five years of imprisonment. ECF No. 16 attach. 1 at 2–3. Petitioner did not appeal. ECF No. 16 at 1.

Petitioner's conviction was based on the following factual background. Petitioner and Michelle Smith had been in a romantic relationship, which ended around August 19, 2017. *Id.* at 5. On August 29, 2017, Smith returned to the house she had shared with Petitioner during their relationship to retrieve her dog and personal items. *Id.* After she pulled her vehicle into the driveway, Petitioner rammed Smith's car with his car. *Id.* Petitioner screamed at Smith and "rip[ped] her shirt from her body" as she walked toward the house to get her dog. *Id.* The pair continued to argue inside the house. *Id.* at 6. When Smith left the house and tried to get back into her car, Petitioner shouted that "this would be her last day alive" and stole her keys and phone and ran back into the house. *Id.* Smith, unable to leave since Petitioner had her keys, followed Petitioner inside where they continued to argue. *Id.* Smith received a phone call from a friend, which Petitioner answered. *Id.* Smith tried to take her phone from Petitioner, but only managed to knock it to the floor. *Id.* Petitioner "turn[ed] and punch[ed] her in the face[,] splitting her lip." *Id.* Petitioner then got a towel for Smith. *Id.*

Later, Smith's friend called back and while Petitioner was speaking with him, Smith shouted her address and asked the friend to help her. *Id.* Petitioner hung up the phone, took the towel from Smith and began to twist it. *Id.* Smith thought Petitioner was going to hit her with the towel, but he instead "put[] it over her head[,] bringing the two ends to the front of her[,] and he start[ed] to twist it around her neck." *Id.* Petitioner twisted the towel around Smith's neck for twenty to sixty seconds, using it to pull her from the kitchen chair where she was sitting down to the floor. *Id.* When Petitioner released Smith, she grabbed her keys and tried to run to her car, but Petitioner picked up a metal baseball bat and followed her. *Id.* at 7. Petitioner struck Smith on the lower leg, buttocks, and lower back with the metal bat. *Id.* Petitioner again took Smith's keys, so she returned to the house. *Id.*

2

Eventually, Petitioner heard sirens approaching, so he told Smith he was leaving and told her to pick him up later. *Id.* Petitioner threatened her, saying "that he has a shotgun in the back of his truck and that he will shoot anyone who comes down that driveway, whether it's the police or Mr. West." *Id.* At the house, the police executed a search warrant and recovered "ammunition for a .22." *Id.* When the police apprehended Petitioner, he stated that the ammunition "was his and that he was not aware as a convicted felon that he was not allowed to have it." *Id.*

The Clerk of the Supreme Court of Virginia received a Petition for a Writ of Habeas Corpus from Petitioner on January 30, 2019. ECF No. 16 attach. 3 at 1. Petitioner alleged ineffective assistance of counsel, stating that his trial counsel (1) did not present pictures of Petitioner's injuries at the sentencing hearing, (2) misadvised Petitioner regarding the length of time he would serve if he pleaded guilty, and (3) did not properly cross-examine Petitioner's victim at the sentencing hearing. *Id.* at 7. Specifically, Petitioner alleged that he relied solely on his attorney's representations when considering whether to accept the plea, and "would not have taken the plea agreement had [he] known [he] would get more than time served." *Id.*

The Supreme Court of Virginia denied the Petition on August 5, 2019. ECF No. 16 attach. 4 at 1. Regarding Petitioner's first claim of ineffective assistance of counsel, the Supreme Court held that this claim satisfied neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984):

> To the extent petitioner contends counsel should have presented the photographs in connection with petitioner's guilty plea, counsel could have correctly concluded the photographs were irrelevant and would not benefit petitioner because petitioner was admitting guilt and, accordingly, forgoing any affirmative defenses, such as self-defense. . .. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

ECF No. 16 attach. 4 at 1–2. The Supreme Court reached the same conclusion regarding Petitioner's second claim. Petitioner made sworn averments during his plea colloquy that he had not been promised anything to induce his plea and that he understood his sentencing exposure. *Id.* at 3. Accordingly, the Supreme Court found that Petitioner "failed to allege facts sufficient to indicate counsel promised or assured him he would receive a specific sentence." *Id.* Additionally, the Supreme Court held that Petitioner's third claim also failed to satisfy either the "performance" or the "prejudice" prong of *Strickland. Id.* at 5. Petitioner contended that his counsel did not cross-examine Smith after she lied about "when and how she had been communicating with [Petitioner]." ECF No. 16 attach. 3 at 7. The Court noted that the transcript demonstrates counsel cross-examined Smith on several topics, and "Petitioner has also not alleged or explained how counsel's additional questioning of Smith might have led the court to impose a lower sentence. Thus, petitioner has failed to demonstrate that counsel's performance was deficient . . .." ECF No. 16 attach. 4 at 5.

Petitioner conditionally filed the instant *pro se* § 2254 Petition for federal habeas relief on November 25, 2019. ECF No. 1 at 1. Petitioner stated the same three claims of ineffective assistance of counsel as he had raised in his state habeas petition. *Id.* at 10–11. Petitioner alleged that his attorney did not present pictures of his alleged self-defense injuries at the sentencing hearing, told him that he would be sentenced only to time served if he accepted the plea agreement, and did not cross examine Smith on alleged untrue statements she made. *Id.*

After Petitioner paid the requisite $5.00 filing fee on June 15, 2020, the Court issued its Order on July 2, 2020 directing Respondent to file within thirty days an answer to the petition conforming to the requirements of Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. ECF No. 8. Respondent timely filed a motion for extension of

time to file his answer, ECF No. 11, which the Court granted, permitting Respondent to file its answer by September 2, 2020, ECF No. 12.

On September 1, 2020, Respondent timely filed a Rule 5 Answer, a Motion to Dismiss, a *Roseboro* Notice, and a Brief in Support of the Motion to Dismiss. ECF Nos. 13–16. Petitioner filed a subsequent Motion on September 14, 2020, captioned "Motion to Grant Petitioner Habeas Corpus." ECF No. 17. In this motion, Petitioner did not respond to the motion to dismiss, but instead asserted that Respondent failed to timely comply with the Court's July 2, 2020 Order directing him to file an Answer to the petition and to cause the state court transcripts and records to be forwarded to the court for examination. *Id.* It appearing to the Court that Petitioner might not have received Respondent's pleadings, on January 14, 2021 the Court ordered the Respondent to resend the responsive pleadings to ensure Petitioner's receipt. ECF No. 18. Respondent then filed a certificate of service verifying service of the responsive pleadings on Petitioner. ECF No. 19. Petitioner has not responded to the motion to dismiss, the Court has not been notified that Petitioner's address has changed, and the Court's Orders sent to Petitioner have not been returned as undeliverable.[1] Therefore, the instant Petition and Motion to Dismiss are ripe for recommended disposition.

## II. ANALYSIS

### A. Exhaustion and Procedural Default

Before considering the merits of a federal habeas petition, the preliminary inquiry must be whether Petitioner's federal habeas petition was timely and whether Petitioner exhausted all

---

[1] Petitioner's address of record is at the Haynesville Correctional Center in Haynesville, Virginia. All matters submitted by him to the Court continually bore that address. Further, Petitioner was cautioned by the Court that he was required to notify the Court of any change of address, and that failure to do so may result in dismissal of his petition. *See* ECF No. 6 at 2.

available state remedies.   Respondent concedes that all of Petitioner's asserted claims were adequately exhausted.  As such, the Court proceeds to address the timeliness of the petition.

    1.  The Petition is untimely

    "On April 24, 1996, a one-year limitation for filing of federal habeas corpus petitions was enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ('the AEDPA')." *Gilmore v. Ballard*, No. 2:09-CV-00041, 2009 WL 6319261, at *1 (S.D.W. Va. Oct. 22, 2009), *report and recommendation adopted in part*, No. CIV.A. 2:09-00041, 2010 WL 1286891 (S.D.W. Va. Mar. 26, 2010).  As Respondent notes, this case is governed by the limitation period set forth in the AEDPA.  ECF No. 15 at 3.  The applicable section of the AEDPA provides, in pertinent part, that:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Section 2244(d)(2) of the AEDPA further provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  Therefore, Section 2254 petitions such as the instant Petition are subject to a one-year statute of limitations and must be dismissed

if they are filed later than one year after the expiration of the time to seek direct review of the highest state court's decision by the Supreme Court of the United States. *See* 28 U.S.C. § 2244(d)(1)(A).

In the instant matter, the Trial Court entered its judgment on April 10, 2018, and the conviction became final on May 10, 2018, after the time to file a notice of appeal expired. Absent any relevant tolling period, Petitioner had until May 10, 2019, to file his federal habeas petition. Petitioner filed his state habeas petition on January 30, 2019, which tolled the federal statute of limitations while it was pending. At that point, he had 101 days remaining in the one-year statute of limitations to file a federal habeas petition. Petitioner's state habeas petition was dismissed on August 2, 2019, and the federal statute of limitations resumed on August 3, 2019 to expire on November 12, 2019. Petitioner ultimately filed his federal habeas petition on November 14, 2021, two days past the one-year deadline. Apart from any additional statutory or equitable tolling, Petitioner's federal habeas petition is untimely and barred from review.

2. Statutory Tolling

Compliance with the statute of limitations must also account for both statutory and equitable tolling. *See id.*; *Holland v. Florida*, 560 U.S. 631, 649 (2010). As for statutory tolling, the one-year statute of limitations runs from the latest of the following:

> (A) the date on which the judgement became final by the conclusion of direct review or the expiration of the time for seeking such review
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence

28 U.S.C. § 2224(d)(1).  Additionally, "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 224(d)(2).

Petitioner is undoubtedly entitled to statutory tolling during the pendency of his state habeas petition, and it appears that time was accounted for under the November 12, 2019 deadline.  Apart from that window, there do not appear to be any other applicable grounds for statutory tolling.  Respondent correctly notes the potential application of the mailbox rule in this case.  "A paper filed by an inmate confined in a institution is timely if deposited in the institution's internal mailing system on or before the last day for filing.  If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule."  Federal Postconviction Remedies & Relief Handbook with Forms § 3:3. *See Dean v. Johnsons*, No. 2:07cv320, 2007 WL 4232732, at *2 n. 8 (E.D. Va. Nov. 1, 2007)(holding that the mailbox rule does not apply where the petition is mailed to a third-party to be "typed and mailed to the Court").  Petitioner appears to have signed the petition on October 16, 2019, and if he had deposited his petition in the institutional mail system at the time, it would have been timely.  However, the Operations Manager at Haynesville Correctional Center has confirmed that Petitioner did not send any legal mail between October 1 and November 20, 2019. ECF No. 16 attach 5.   Instead, it appears that Petitioner opted to use a third party who only mailed the petition, by USPS "priority mail", on November 13, 2019, after the November 12, 2019 expiration of statute of limitations.  Apart from the filing of his state habeas petition, no other grounds for statutory tolling appear to be available to the Petitioner.

8

3. Equitable Tolling

"To qualify for equitable tolling, a petitioner must demonstrate both that (1) he had been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Rashid v. Clarke*, No. 1:18CV262 (TSE/MSN), 2018 WL 1937349, at *3 (E.D. Va. Apr. 24, 2018) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))). In the Fourth Circuit, that means "the petitioner is obliged to specify the steps he took in diligently pursuing his federal claim, and a lack of diligence generally acts to negate the application of equitable tolling." *Rashid v. Clarke*, No. 1:18CV262 (TSE/MSN), 2018 WL 1937349, at *3 (E.D. Va. Apr. 24, 2018) (citing *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001)). "In addition, the petitioner must 'demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances.'" *Rashid v. Clarke*, No. 1:18CV262 (TSE/MSN), 2018 WL 1937349, at *3 (E.D. Va. Apr. 24, 2018) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

Petitioner did not acknowledge that his petition was untimely, he alleged no facts demonstrating that he diligently pursued his federal habeas claim, and offered no reason why he did not timely file his federal habeas claim. *See* ECF No. 1, *passim*. Moreover, Petitioner also failed to make any convincing claim of actual innocence. A petitioner may overcome a procedural bar, such as untimeliness, if the petitioner makes "a convincing showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). To assert actual innocence, the petitioner must present new, reliable evidence, which is sufficient to convince the court that no reasonable juror could have found the petitioner guilty beyond a reasonable doubt. *Schulp v.*

9

*Delo*, 513 U.S. 298, 329 (1995)).  Without presenting "new reliable evidence," Petitioner cannot establish that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327.  Here, Petitioner has not submitted any new reliable evidence of his innocence.  Therefore, the undersigned finds that Petitioner is not entitled to equitable tolling.

Accordingly, the undersigned **FINDS** that Petitioner did not timely file the instant Petition and **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** on the basis of Respondent's timeliness argument.

While the untimely petition provides a sufficient basis for dismissal, in light of the narrow extent of Petitioner's untimeliness, the Court nevertheless proceeds to evaluate the merits of the claim to ensure a thorough analysis.

**B.  Ineffective Assistance of Counsel**

Generally, habeas relief is warranted only if Petitioner can demonstrate that the adjudication of his claims by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Thus, federal habeas relief is precluded, so long as "fair-minded jurists could disagree" on the correctness of the state court's decision.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could

disagree that the state court's decision conflicts with this Court's precedents. It goes no further.")
(citing *Felker v. Turpin,* 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified *res judicata*
rule" under § 2244)). In other words, "AEDPA prohibits federal habeas relief for any claim
adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains."
*Premo v. Moore*, 562 U.S. 115, 121 (2011).

In *Williams v. Taylor*, the Supreme Court explained that the "exceptions" encapsulated by
§ 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.
529 U.S. 362, 404-05 (2000). A federal habeas court may issue the writ under the "contrary to"
clause if the state court applies a rule different from the governing law set forth in Supreme
Court cases, or if it decides a case differently than the Supreme Court has done on a set of
materially indistinguishable facts. *Id.* at 405–06. This Court may grant relief under the
"unreasonable application" clause if the state court correctly identifies the governing legal
principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular
case. *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000). *See also Woodford v. Visciotti*, 537 U.S.
19, 27 (2002) ("The federal habeas scheme leaves primary responsibility with the state courts for
these judgments and authorizes federal-court intervention only when a state-court decision is
objectively unreasonable."). "The focus of the [unreasonable application] inquiry is on whether
the state court's application of clearly established federal law is objectively unreasonable, and . .
. an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685,
694 (2002).

In making this determination under Section 2254(d)(1), the Court "is limited to the record
that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*,
563 U.S. 170, 181–82 (2011) ("Section 2254(d)(1) refers, in the past tense, to a state-court

11

adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court."). Thus, it is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997). *See also Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (explaining that the Court independently reviews whether that decision satisfies either standard). Additionally, in undertaking such review, this Court is mindful that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Because there is no allegation that the State court decided Petitioner's state habeas endeavors "differently than the [U.S. Supreme] Court has on a set of materially indistinguishable facts," *Williams v. Taylor*, 529 U.S. 362, 413 (2000), the relevant exception is "permitting relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law" and "[t]he applicable federal law consists of the rules for determining when a criminal defendant has received inadequate representation as defined in *Strickland*," *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Harrington v. Richter*, 562 U.S. 86, 100 (2011); 28 U.S.C. § 2254(d)(1)). *See also Strickland v. Washington*, 446 U.S. 668 (1984).

In order to receive habeas relief in State court for ineffective assistance of counsel claims under the Sixth Amendment, Petitioner must show that trial counsel provided deficient assistance, and that they were prejudiced as a result of Trial Counsel's deficiency. *Strickland v.*

12

*Washington*, 446 U.S. 668, 700 (1984) (conceptualizing the inquiry as two required prongs: a deficiency prong and a prejudice prong). First, to establish deficient performance, Petitioner is required to show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 446 U.S. at 688-89 (holding that there is a strong presumption that trial counsel provided reasonable professional assistance). Second, Petitioner is also required to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 687, 693–94 (holding that counsel's errors must be "so serious as to deprive the defendant of a fair trial," and that a petitioner must "show that the errors had some conceivable effect on the outcome of the proceeding").

The United States Supreme Court summarized the high bar faced by petitioners in a federal habeas proceeding where a petitioner's Sixth Amendment ineffective assistance of counsel claims were previously rejected by the state court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so . . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo v. Moore*, 562 U.S. 115, 122–23 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009))) (internal citations omitted). *See also Knowles*, 556 U.S. at 123 ("Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard . . . Mirzayance's

13

ineffective-assistance claim fails.") (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (*per curiam*)).   Particularly relevant to Petitioner's claim, the "[f]ailure to raise a meritless argument can ***never*** amount to ineffective assistance." *Juniper v. Zook*, 117 F. Supp. 3d 780, 791 (E.D. Va. 2015) (quoting *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996)) (emphasis added).

With these principles in mind, the undersigned now turns to the merits of the Petition.

Claim 1: Failure to Introduce Pictures in Support of Self-defense

Petitioner argues that his trial counsel's assistance was ineffective because he failed to introduce pictures of purported bruises and bite marks on his body, allegedly inflicted by victim in order to argue that he was acting in self-defense. The Supreme Court of Virginia rejected this claim, finding that it satisfied neither prong of the *Strickland* test.  Notably, the court determined that "counsel could have correctly concluded the photographs were irrelevant and would not benefit petitioner because petitioner was admitting guilt and, accordingly, forgoing any affirmative defenses, such as self-defense" ECF No 14 attach 4 at 1.  Similarly, to the extent that Petitioner contends that the photographs should have been presented at sentencing, the court held that " counsel could have reasonably concluded doing so would be inadvisable because it could be perceived negatively by the court as an attempt . . . to evade responsibility. " *Id.*  In addition to failing to indicate when his counsel should have introduced the pictures, Petitioner failed to allege or explain how they would have proven self-defense or affected the outcome of his criminal proceedings.

Respondent offers a number of arguments in response to the anticipated variations of Petitioner's claim, speculating as to when Petitioner may have been arguing the photos should have been introduced and the potential effect, if any of the, pictures.  While Respondent's claims

14

provide a thorough overview as to what Petitioner may have intended in this claim, it is noteworthy that the Petitioner did not provide these assertions himself.   Nonetheless, Respondent's assertions can be summarized as highlighting the adequacy of his trial counsel's performance and tactical decisions regarding the pictures and the lack of prejudice due largely to Petitioner's admission of guilt. ECF No. 16 at 18–21. The undersigned agrees.  In light of the trial counsel's reasonable trial strategy and determinations regarding the potential effect of the pictures and his admission of guilt, Petitioner has failed  show that trial counsel's performance was deficient or prejudicial to the extent that the outcome of the proceeding would have been different. Therefore, the Court **FINDS** that the Supreme Court of Virginia's ruling on this portion of his claim was neither unreasonable nor contrary to federal law.

Claim 2: Guilty Plea Induced by Assurances of Time Served

Petitioner also contends that his attorney induced his guilty plea with assurances that he would be going home on time served.  He specifically states that "[he] would not have taken or signed the plea agreement had [he] known [he] would get more than time served." ECF No. 1 at 10.  To support his claim, Petitioner provided affidavits from his friends and family, namely Jerry Flannagan, Betty Chapman, and Brianna Hegamyer.  ECF No. 1 at 6–9, 12–13.  These affidavits recounted counsel's remarks and corroborated Petitioner's impression that he would be released with time served.  However, counsel's remarks do not appear to be assurances of any particular outcome.  While all of the affidavits confirm that trial counsel discussed the possibility of release with Petitioner and the affiants, none appear to rise to the level of assurances or guarantees of any particular outcome.  In fact, Betty Chapman's affidavit stated, "on the trial day [counsel] stated that the best [Petitioner] could hope for was that [he] would be coming [home] with time served." ECF No. 1 at 12.

15

The Supreme Court of Virginia also cites trial counsel's explanation of his advice to Petitioner regarding the guilty plea. Counsel clarifies that he "made clear to [petitioner] that his [plea] agreement did not encompass a guarantee of his sentence and that it would be done by the court". ECF No. 16 attach 4 at 3. He also recalled indicating that "since [petitioner] would have been in jail from his arrest on August 30, 3017 until the sentencing date of April 10, 2018, his time already incarcerated would be approximately the low end of the guidelines." *Id.*

The Supreme Court of Virginia did not unreasonably hold that this portion of Petitioner's claim failed to satisfy the performance or the prejudice prong of the *Strickland* test. Viewed together, Petitioner's claims, the provided affidavits, and trial counsel's clarifying remarks in his affidavit, objectively indicate that trial counsel informed Petitioner of the possibility of release for time served as a low end possibility, and Petitioner improperly perceived that as a certainty. At most, counsel's remarks could be construed as inaccurate advice, however any alleged misadvice given by trial counsel was ameliorated by the trial court thorough its advisement of Petitioner's potential sentence in connection with his guilty plea.

In association with his guilty plea and the court's colloquy, Petitioner made specific averments that he had not been made any promises to induce his plea. ECF No. 16 attach 4 at 3. Accordingly, the Court "made inquiry and was of the opinion that the pleas were made freely, intelligently, and voluntarily with an understanding of the nature of the charges against him and the consequences of his pleas, and of the waiver of trial by jury and of appeal, and the Court accepted the pleas of guilty." ECF No. 16 attach 2 at 2. "Solemn declarations during a plea colloquy in open court carry a strong presumption of verity, and thus, subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Smith v. Brown*, 291 Va. 260, 265 (2016). In light of this determination, any ambiguity or

16

misinterpretation of trial counsel's representation to Petitioner is remedied by the safeguards and reminders included in the trial court's guilty plea colloquy.

Moreover, Petitioner also failed to demonstrate that it is reasonably probable that the outcome of his case would have been different had he gone to trial after, theoretically, having rejected the plea offer after being advised of his potential sentence. Had he gone to trial, Petitioner would have faced the charges to which he pled and the charges that were nolle prossed in exchange for his guilty plea. The Supreme Court of Virginia did not unreasonably conclude that, other than self-defense, "Petitioner proffers no defense that he might have raised to any of his charges, does not suggest that the evidence may not have been sufficient to support any of his convictions, and fails to contend his sentence might have been lower had he gone to trial." ECF No 16 attach 4. Further, by pleading guilty, Petitioner decreased his sentencing exposure by twelve months and created the opportunity for his counsel to argue leniency at sentencing for demonstrating remorse. Ultimately, it was not unreasonable for the Supreme Court of Virginia to conclude that it was rational for Petitioner's counsel to advise that Petitioner plead guilty. Petitioner has failed to demonstrate that counsel's performance was deficient or that he suffered prejudice such that the outcome would have been different had he gone to trial. Therefore, the Court **FINDS** that the Supreme Court of Virginia's ruling on this portion of his claim was neither unreasonable nor contrary to federal law.

### Claim 3: Cross-examination of the Victim

Finally, Petitioner contends that he was denied effective assistance of counsel because, during the sentencing hearing, counsel did not cross-examine the victim to demonstrate that she lied. Petitioner also contends that he gave his counsel questions that would have revealed that the victim was lying. ECF No. 1 at 11. The Supreme Court of Virginia did not unreasonably

conclude that this claim satisfied neither the performance nor the prejudice prong of *Strickland.* The court specifically noted that in the sentencing hearing transcript, Petitioner's counsel did cross-examine the victim on several topics. ECF No.16 attach 4. Petitioner has not specified what further questioning should have occurred, nor has Petitioner explained how additional questioning might have led to a different outcome. Either way, the manner and method of cross-examination is an aspect of trial strategy that is reserved for counsel. *See United States v. Nersesian*, 824 F.2d 1294, 1321 (2nd Cir 1987)("the decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys . . . . Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are similarly strategic in nature." Petitioner has not established that trial counsel's strategy and approach were unreasonable, and Petitioner failed to demonstrate that his counsel's performance was deficient or prejudicial. Therefore, the Court **FINDS** that the Supreme Court of Virginia's ruling on this portion of his claim was neither unreasonable nor contrary to federal law.

### III. <u>RECOMMENDATION</u>

In light of Petitioner's failure to establish that his claims are timely and properly exhausted, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 14, be **GRANTED** and Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

### IV. <u>REVIEW PROCEDURE</u>

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date

this Report and Recommendation is forwarded to the objecting party. *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner and to counsel for Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge
LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
July 8, 2021